UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case 8:20-cr-00028-T-60AAS

WILLIAM LOPEZ HURTADO
_____ /

DEFENDANT'S SENTENCING MEMORANDUM

## I. MR. HURTADO'S BACKGROUND

William Lopez Hurtado was born in Jurado, Colombia, and endured a difficult childhood marked by poverty and the death of his mother when he was only ten years old. (PSR ¶37). He has very little formal education, having dropped out of school after the eighth grade. (PSR ¶49). While he has done a variety of jobs throughout his life to make ends meet, most of his employment experience has been as a fisherman, often making less than $6 USD per day. (PSR ¶51). He agreed to take on this smuggling venture solely to help his wife and young children, all of whom have been struggling in his absence. (PSR ¶¶16, 39, 40).

## II. REQUEST FOR A ONE-LEVEL DOWNWARD VARIANCE

Due to his complete lack of criminal history, Mr. Hurtado is receiving a two level reduction in his offense level for "safety valve" (PSR, ¶¶19, 28-34). The

government has indicated that he may also get the benefit of a §5K1.1 motion, which would further lower his total offense level to 27. Mr. Hurtado respectfully requests that this Court depart/vary one additional level down from that range, as it is "sufficient but not greater than necessary" to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). The Sentencing Guidelines are now, of course, advisory. *United States v. Booker*, 543 U.S. 220 (2005). This Court should apply a downward adjustment to the Guidelines calculation because of Mr. Hurtado's minor role in the offense. In addition, this Court should impose a sentence at the bottom of the guidelines to further reflect the nature of this offense and Mr. Hurtado's history and characteristics.

To be sure, the nature of this offense and the quantity of cocaine involved implicate the needs to punish, deter, and incapacitate. However, those needs are mitigated in this case by Mr. Hurtado's circumstances and motivation for committing the offense. As for punishment, Congress requires this Court to consider "just punishment." Mr. Hurtado turned to the drug trade as a mule due to the poverty he has experienced throughout his life. While his motivations do not excuse his actions, they do lessen the degree of his culpability.

A downward departure/variance is also warranted to reflect Mr. Hurtado's lesser role in the larger drug trafficking scheme. While the minor-role adjustment accounts for this to some extent within the Guidelines range, it expressly does not consider those actors within the scheme that are not discernible, or identifiable from

the evidence, or involved in conduct outside of the defendant's relevant conduct. *United States v. Rodriguez De Varon*, 175 F.3d 930, 944 (11th Cir. 1999). In considering the statutory sentencing factors under 18 U.S.C. § 3553, however, this Court is not so limited. Mr. Hurtado is an insignificant cog in the massive and intricate machinery of the South American drug trade. A host of actors, unknown to both the Government and Mr. Hurtado, owned and controlled the cocaine, and its further distribution to addicts. His infinitesimally small role in the drug trade as a mariner on a panga boat decreases his culpability and the amount of punishment that is "just."

As to deterrence, even a guidelines sentence will be more than enough to specifically deter Mr. Hurtado. He has been ripped from his country and his family and will be confined in an American prison among hardened criminals who do not speak his language for a period of years. The message to Mr. Hurtado will be clearly received, and he is extraordinarily unlikely to climb aboard another rickety panga boat again and risk further foreign imprisonment.

Because the specific deterrence of Mr. Hurtado will be so effective even with a shortened prison sentence, the need to protect society from further crimes committed by him is also diminished in this case. Finally, as to general deterrence, the power of even a long prison sentence to project general deterrence from Tampa, Florida, to the next hapless, down-on-his-luck harvester in Colombia is questionable at best. Mr. Hurtado's sentence should not be increased on the unlikely hope that the population

3

of a foreign country will suddenly get the message. Such sentences are appropriate for cartel kingpins, not insignificant mariners.

Finally, Mr. Hurtado's history and characteristics suggest a man deserving of some measure of mercy for his mistake. He has dealt with instability and poverty his entire life. He has a supportive and loving family back home in Colombia who need his help and anxiously await his return, (*See Exhibit A*). He should not go unpunished, but even a sentence of 70 months would be greater than necessary to meet the goals of sentencing in this case. Accordingly, this Court should depart one additional level downward from that range.

**WHEREFORE** the Defendant, Mr. Hurtado, prays this Court will vary downwards from the Guidelines range and impose a sentence of 63 months' incarceration.

Dated this 17th day of November, 2020.

Respectfully Submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

*/s/ Paul Downing*
Paul Downing
Pennsylvania Bar # 0307704
Assistant Federal Defender
400 North Tampa St, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Fax: 813-228-2562
Email: Paul_Downing@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of November, 2020, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to:

AUSA Dan Baeza

*/s/ Paul Downing*
Paul Downing
Assistant Federal Defender